# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

REZA RAY JALISI,

Plaintiff,

v.

CITY OF POWAY; DOE SOCIAL MEDIA MANAGER,

Defendants.

Case No.: 3:26-cv-05920-RBM-DDL

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER [Doc. 3]; and**

**(2) REQUIRING JOINT STATUS REPORT**

Plaintiff Reza Ray Jalisi ("Plaintiff") has filed a Complaint against the City of Poway and the City of Poway's unidentified Social Media Manager (collectively, the "Defendants") alleging that Defendants are hiding his Facebook comments in a viewpoint-discriminatory way, thereby violating the First Amendment and the California Constitution. (*See generally* Doc. 1 ("Compl.").) Pending before the Court is Plaintiff's Ex Parte Application for Temporary Restraining Order ("TRO Motion"). (Doc. 3.) The TRO Motion requests an Order requiring Defendants to: "[r]estore the public visibility of every comment by Plaintiff that has been hidden on the City's official Facebook page;" "[r]emove any restriction that causes Plaintiff's comments on the City Page to be hidden

from the public;" and "[r]efrain from hiding, deleting, or otherwise suppressing Plaintiff's comments on the City Page on the basis of their viewpoint or of Plaintiff's viewpoint as a critic of the City." (*Id.* at 1–2.) Defendants filed a Limited Opposition to Plaintiff's TRO Motion. (Doc. 4.)[1]

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having reviewed the briefs above, and for the reasons below, the TRO Motion (Doc. 3) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[2]

The City of Poway ("City" or "Poway") maintains a public Facebook page where it "posts updates about various items that may be of interest to [City] residents and the general public." (Compl. ¶ 6.) The Facebook page is open to public comment, and members of the public routinely comment on posts on the page. (*Id.* ¶ 7.) Plaintiff is a resident of Poway who has criticized aspects of the City's decisions for several years, including by speaking during city council meetings, corresponding with City officials, and posting critical comments on the City's Facebook page. (*Id.* ¶ 8.) City officials and staff, including those responsible for the Facebook page, appear to recognize Plaintiff as a critic. (*Id.*; *see also* Doc. 4-1 [Decl. of Rene Carmichael ("Carmichael Decl.")] ¶ 12.)

Several times during the past year, Plaintiff's comments on the City's Facebook page

---

[1] Plaintiff also filed a Request for Leave to File Reply, arguing that a supplemental declaration by Plaintiff strengthens his claim "that the City is engaged in viewpoint-based discrimination." (Doc. 5-1 at 3.) Although, as Plaintiff recognizes, replies to oppositions to ex parte applications "will not be considered unless otherwise ordered by the Court," *see* The Hon. Ruth Bermudez Montenegro Civ. Chambers R. VI, the Court has considered the supplemental declaration and finds that it does not alter its conclusion below.

[2] In ruling on an application for a temporary restraining order, the Court is permitted to consider the allegations in the Complaint, as well as exhibits, affidavits, and declarations submitted by the parties. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (noting that, on a motion for preliminary injunction, "[t]he weight to be given [to the evidence] is in the discretion of the trial court") (citation omitted).

have been "hidden" or "shadow banned;" that is, his comments are not deleted and are still visible when *Plaintiff* looks at the posts, but are not visible when *other Facebook users* look at the posts. (*See* Compl. ¶¶ 11(a)–(f); Doc. 3-2 [Decl. of Reza Ray Jalisi ("Jalisi Decl.")] ¶¶ 5–18; Doc. 3-3 [Decl. of Joe Maldonado ("Maldonado Decl.")] ¶¶ 2–6.) The City's Social Media Policy provides that "[t]he City's social media presence serves as a limited public forum and all content shall be monitored and moderated." (Doc. 3-1 at 7.) The Policy indicates that user-generated posts will be deleted if those posts, among other things: "use[] abusive, vulgar, offensive, profane, sexual, threatening, deliberately untruthful or defamatory language or content." (*Id.* (describing a dozen categories of user-generated content that will be deleted if posted).) Additionally, "[p]ostings from a public user account which contain inappropriate or disruptive content, . . . or believed to be spam, may result in the public user account being blocked from any further activity on the City's social media account . . . at the discretion of the City Manager's Office." (*Id.* at 8.)

Plaintiff believes that the City is hiding his comments because it wants to suppress his critical viewpoints. In support, he cites to evidence of other users' comments that are not hidden, despite them containing similar messaging to his hidden comments. (*See* Jalisi Decl. ¶ 6 and Maldonado Decl. ¶ 6.) For example, on July 4, 2026, the City published on its Facebook page a post about a celebration at Old Poway Park, including photographs of Poway Mayor Steve Vaus in a cowboy hat. (TRO Mot. at 11.) Plaintiff's comment on this post—"who's the clown with the cowboy hat on?"—was hidden. (*Id.*) Another user's comment on this post—"who's the Adam Henry[3] wearing a flag shirt and cowboy hat?"—remained visible. (*Id.*) Another time, Plaintiff commented on a City Facebook post: "Can the city provide real examples of how the taxpayers of Poway are involved in development decisions and their voice and feedback is actually utilized to influence decisions?" (Jalisi Decl. ¶¶ 8–10; Maldonado Decl. ¶ 6.) This comment was hidden from other Facebook

[3] Plaintiff represents that "Adam Henry" is a euphemism for "asshole." (TRO Mot. at 12.)

users. (*Id.*) But when Plaintiff's wife left a comment on the same post that repeated Plaintiff's question "word for word," that comment remained visible. (*Id.*)

The City represents that none of its employees have ever hidden or removed any comments made by Plaintiff; instead, Meta's Moderation Assist Program has hidden these comments because it has flagged Plaintiff's Facebook profile as a "non-human 'bot'" account. (Carmichael Decl. ¶¶ 5–8.) Meta Moderation Assist "is necessary because the City does not have the resources nor ability to actively monitor each and every comment made in real time in order to manually hide bot comments, particularly considering these comments can be submitted 24 hours a day seven days a week." (*Id.* ¶ 9.) The City believes that Plaintiff's comments were hidden because Moderation Assist flagged him as a bot: "Moderation Assist will automatically hide a post if (1) the commenter does not have any friends or followers, (2) the comment has a link, or (3) the commenter does not have a profile picture." (*Id.* ¶ 8.) Plaintiff does not have a profile picture, has only one Facebook friend, and has no posts on his own profile, which "are typically strong indicators that the account is a non-human bot." (*Id.* ¶ 10.)

## II. LEGAL STANDARD

"The legal standards applicable to TROs and preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation modified). A plaintiff may secure a TRO by establishing that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the Government opposes the TRO, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. DISCUSSION

The City "does not oppose an order . . . prohibiting hiding, deleting, or otherwise suppressing Plaintiff's comments on the City Page on the basis of their viewpoint or of Plaintiff's viewpoint as a critic of the City." (Doc. 4 at 2 (citation modified).) Nor does the City "oppose manually unhiding Plaintiff's prior Facebook posts." (*Id.*) Based on Defendant's non-opposition, the Court **GRANTS** the TRO Motion as to these two requests. The City does oppose, though, Plaintiff's request to "remove any restriction that causes Plaintiff's comments on the City Page to be hidden from the public because at this time . . . the City has not discovered a method by which the Moderation Assist program can be turned off only for one commenter." (*Id.* at 3 (citing Carmichael Decl. ¶ 11).) The discussion below focuses only on this one request.

As the Party seeking a TRO, Plaintiff bears the burden of showing that the *Winter* factors weigh in his favor. The Court finds that he has not met that burden.

### A. Likelihood of Success

For purposes of ruling on the TRO Motion, the Court need decide whether the City's Facebook page is a limited public forum or a designated public forum. Even when considering laws regulating expression in "quintessential public forums,"[4] courts "ask first whether the law is content based or content neutral." *Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023) (considering a law that regulated speech "on public streets"). "The crucial first step in the content-neutrality analysis . . . is determining whether the law is content neutral on its face—that is, whether it draws distinctions based on the message a speaker conveys." *Id.* (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)) (citation modified). "The second step in the content-neutrality analysis is to ask whether the law is content based in its justification," as "even facially content neutral regulations will be

---

[4] These are "[p]ublic fora [that] have achieved a special status in our law," where "the government must bear an extraordinarily heavy burden to regulate speech." *Grossman v. City of Portland*, 33 F.3d 1200, 1204–05 (9th Cir. 1994) (citation modified).

considered content based if they cannot be justified without reference to the content of the regulated speech or were adopted by the government because of disagreement with the message [the speech] conveys." *Id.* (citing *Reed*, 576 U.S. at 164 and *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation modified)). If the restriction is content based, it is subject to strict scrutiny. *Id.* If the restriction is content neutral, it is subject to intermediate scrutiny. *Id.*

As a threshold matter, based on the limited and preliminary record before it, the Court notes it is likely that Plaintiff's comments were hidden not by a City policy, but by the Meta Moderation Assist Program. But even assuming (as Plaintiff argues the Court should, *see* TRO Mot. at 20), that the restrictive effects of the Meta Moderation Assist Program may be attributed to the City,[5] the Court does not find the restrictions unconstitutional.

First, the restriction is facially content neutral. Based on the Carmichael Declaration, profiles are not flagged as bots by "examin[ing] the content of the message that is conveyed." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (citation omitted). Rather, they are flagged based on the presence of certain predictive factors, such as the absence of a profile picture or the absence of other Facebook friends. Thus, determining whether a comment may be hidden has nothing to do with the content of the comment.

Second, the restriction can be "justified without reference to the content of the regulated speech" and there is no sign that the restriction was "adopted by the government because of disagreement with the message [the speech] conveys." *Porter*, 68 F.4th at 439. The City uses Meta Moderation Assist because it "does not have the resources nor ability to actively monitor each and every comment made in real time in order to manually hide

---

[5] This distinction may be significant, as "the First Amendment protects individuals only against government, not private, infringements upon free speech rights." *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996). But because it has not been briefed by either Party, the Court does not address this issue.

bot comments." (Carmichael Decl. ¶ 9.) There is nothing in the record to suggest that the City turned to Meta Moderation Assist "motivated by disagreement with any particular expressive" conduct. *Porter*, 68 F.4th at 443. Indeed, Plaintiff's evidence that identical comments published by other users remained visible actually strengthens the finding that the restriction is content neutral; critical speech is clearly tolerated by the City. (*See* Carmichael Decl. ¶ 7 ("There are currently a number of comments publicly viewable [that] are critical of the City.").) Therefore, the Court finds that the restriction is content neutral and applies intermediate scrutiny. *Porter*, 68 F.4th at 443.

To survive intermediate scrutiny, the restriction must "'further[] an important or substantial governmental interest,' that interest must be 'unrelated to the suppression of free expression,' and the 'incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

The City asserts that its interest in using Meta Moderation Assist is "prevent[ing] non-human 'bot' spam postings on its Facebook page, which can overwhelm public pages and make it much more difficult for the public to both obtain important information and participate in the conversation." (Carmichael Decl. ¶ 8.) The Court finds that the two-way exchange of information between the citizenry and the City is a substantial governmental interest. *See Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1415 (9th Cir. 1996) ("An inherent power of any sovereign government and one that is fundamental to any form of democracy is the ability to communicate with the citizenry."); *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 308–09 (1984) (Stevens, J., dissenting) ("There can be no question but that the First Amendment secures the rights of individuals to communicate with their government.").

Furthermore, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 377. In fact, the interest runs *counter* to the suppression of free expression; it seeks to ensure that residents have effective access to the exchange of ideas with their neighbors and their government. *See Packingham v. North Carolina*, 582 U.S.

98, 98 (2017) ("Today, one of the most important places to exchange views is cyberspace, particularly social media . . . ."); *Faison v. Jones*, 440 F. Supp. 3d 1123, 1138 (E.D. Cal. 2020) ("To be sure, there is a public interest in encouraging public officials to communicate and make themselves accessible to their constituents over social media."). The interest is related to the suppression of expression by non-human bots, but bots are neither "human beings with First Amendment rights" nor the "[corporations] . . . composed of [them . . . that] possess First Amendment rights themselves." *Moody v. NetChoice, LLC*, 603 U.S. 707, 746–47 (2024) (Barrett, J., concurring).

Finally, although the record shows there are "incidental restriction[s]" on speech, such as the hiding of comments posted by human beings flagged as bots, those "incidental restriction[s]" are "no greater than essential to the furtherance" of the governmental interest here. *O'Brien*, 391 U.S. at 377. "A critical feature of this inquiry turns on whether the [government] seriously undertook to address the problems it faces with less intrusive tools readily available to it." *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 404 (6th Cir. 2022); *see also Schneider v. Town of Irvington*, 308 U.S. 147, 162 (1939) (holding that ordinances banning all distribution of literature in public streets in order to prevent litter were invalid under the First Amendment because the cities could have just punished "those who actually throw papers on the streets" without any similar restriction on expressive conduct); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996) (holding that a ban on price advertising was invalid under the First Amendment because it was "perfectly obvious that alternative forms of regulation that would not involve any restriction on speech" could also "achieve the State's goal of promoting temperance").

Again, on the early record before it, the Court finds that the City has no alternative methods to prevent non-human bot accounts from flooding their Facebook page. (*See* Carmichael Decl. ¶¶ 9, 11.) This is not a situation where there is an obvious, alternative method of regulation that would achieve the governmental interest and incidentally censor no speech. *See 44 Liquormart*, 517 U.S. at 507. And to the extent Plaintiff has suffered "incidental restriction[s]," the City has agreed to remedy them, and Plaintiff will have a

Court Order requiring these remedies. *O'Brien*, 391 U.S. at 377.

In summary, even assuming the Meta Moderation Assist program can be considered a government restriction on speech, the restriction is content-neutral and on this record survives intermediate scrutiny. The likelihood of success on the merits factor "is a threshold inquiry." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "If a movant cannot show a likelihood of success on the merits, then a court need not consider the other factors." *Ubers Techs., Inc. v. City of Seattle*, 168 F.4th 1202, 1219 (9th Cir. 2026) (citation modified). Because Plaintiff cannot show a likelihood of success on the merits here, the Court will not consider the other TRO factors. Therefore, the TRO Motion is **DENIED** as to an Order "remov[ing] any restriction that causes Plaintiff's comments on the City Page to be hidden from the public." (TRO Mot. at 2.)

**B. California Constitution**

Plaintiff also argues that his claims under the California Constitution "provide[] an independent basis for the same injunction." (*Id.* at 21.) In support, he states only: "The California free speech clause is interpreted independently of the First Amendment and is in some respects broader." (*Id.* at 21–22 (citing *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 908–10 (1979)).) Plaintiff is represented by counsel and bears the burden of demonstrating relief is appropriate. "The Court is not obligated to entertain an unbriefed argument, nor is it inclined to try to figure out what Plaintiff[] [is] arguing." *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1162 n.4 (N.D. Cal. 2017).

**C. The Parties Shall Continue to Meet and Confer**

The Court appreciates the Parties' early meet and confer efforts and the way those efforts have simplified the issues before the Court. The Court believes, though, that more fulsome efforts may have prevented the filing of this Action in the first place. Therefore, the Court **ORDERS** the Parties to meet and confer to discuss extrajudicial resolution of the instant Action. The Parties **SHALL FILE** a Joint Status Report on or before **October 30, 2026** informing the Court of any remaining issues, the Parties' positions regarding those issues, and whether the Parties believe an early settlement conference with Magistrate

Judge Leshner may be beneficial. The Joint Status Report shall not exceed six (6) pages.

The Court will not set a hearing on a motion for preliminary injunction unless and until the Parties meet and confer and file the Joint Status Report. If the Court does set such a hearing, and the hearing is scheduled after the expiration of the TRO, Plaintiff may move for an extension, or the Parties may stipulate to one. *See* Fed. R. Civ. P. 65(b)(2).

## IV. CONCLUSION

For the reasons discussed above, the TRO Motion (Doc. 3) is **GRANTED in part** and **DENIED in part**. Defendants, including their officers, agents, servants, employees, and attorneys, **SHALL**:

1. Within 24 hours of receiving notice of this Order, restore the public visibility of every comment by Plaintiff that has been hidden on the City's official Facebook page; and
2. Refrain from hiding, deleting, or otherwise suppressing Plaintiff's comments on the City's official Facebook page on the basis of their viewpoint.

The security requirement of Federal Rule of Civil Procedure 65(c) is **WAIVED.** The Parties shall meet and confer and **FILE** a Joint Status Report in accordance with the directives above on or before **October 30, 2026**. Plaintiff **SHALL SERVE** this Order on Defendants or Mr. Fenstermacher by email on or before **October 23, 2026**. After Plaintiff serves this Order on Defendants or Mr. Fenstermacher, Plaintiff **SHALL FILE** proof of such service to the docket.

**IT IS SO ORDERED.**

DATE: October 22, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE