# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REZA RAY JALISI,<br>Plaintiff,<br>v.<br>CITY OF POWAY; DOE SOCIAL MEDIA MANAGER,<br>Defendants. | Case No.: 3:26-cv-05920-RBM-DDL<br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br>**[Doc. 12]** |

Plaintiff Reza Ray Jalisi ("Plaintiff") has filed a Complaint against the City of Poway and the City of Poway's Social Media Manager (collectively, the "Defendants") alleging that Defendants are hiding his Facebook comments in a viewpoint-discriminatory way, thereby violating the First Amendment and the California Constitution. (*See generally* Doc. 1 ("Compl.").) On October 22, 2026, the Court denied in part and granted in part Plaintiff's Ex Parte Application for Temporary Restraining Order. (Doc. 7.) After the Parties' meet and confer efforts did not successfully resolve the case (*see* Doc. 9), the Court set a briefing schedule on a motion for preliminary injunction and *sua sponte* extended the Temporary Restraining Order to November 19, 2026 (Doc. 11). Now pending before the Court is Plaintiff's Motion for Preliminary Injunction ("PI Motion"). (Doc. 12.)

The PI Motion seeks an Order requiring Defendants to: "[k]eep publicly visible every comment by Plaintiff restored under the Court's October 22, 2026 Order;" "[r]efrain from hiding, deleting, or otherwise suppressing Plaintiff's comments on the City's official Facebook page;" "post, in a location on the City Page readily accessible to commenters, a

description of each Moderation Assist or other automated criterion the City has enabled that may cause a comment to be hidden . . .;" and "perform manual review of auto-moderated comments according to a written, viewpoint-neutral policy, if such manual review occurs." (*Id.* at 2.) Defendants filed an Opposition to Plaintiff's Motion for Preliminary Injunction. (Doc. 13.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).[1] Having reviewed the briefs above, and for the reasons below, the PI Motion (Doc. 12) is **DENIED**.

## I. BACKGROUND[2]

### A. The City's Facebook Page

The City of Poway ("City" or "Poway") maintains a public Facebook page where it "posts updates about various items that may be of interest to [City] residents and the general public." (Compl. ¶ 6.) The Facebook page is open to public comment, and members of the public routinely comment on posts on the page. (*Id.* ¶ 7.) The City's Social Media

---

[1] In this Circuit, "there is no presumption in favor of evidentiary hearings under Rule 65." *Gryglak v. HSBC Bank USA, N.A.*, 802 F. App'x 292, 293 (9th Cir. 2020) (citing *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 554–55 (9th Cir. 1986)). Although "proceeding on affidavits alone might be inappropriate" where the facts are "sharply disputed . . . and little time would be required for an evidentiary hearing," the circumstances here do not require an evidentiary hearing. *Nelson*, 799 F.2d at 555. The Parties have participated in early discovery (*see* Doc. 12-1–12-6; Doc. 13-1–13-7) and the factual record is sufficient to resolve the instant motion. *Accord Isomedia, Inc. v. Spectrum Direct, Inc.*, CASE NO. C08-1733JLR, 2009 WL 10676393, at *5 n.5 (W.D. Wash. July 1, 2009) ("It is within the court's discretion to deny a motion for preliminary injunction without an evidentiary hearing.") (citations omitted).

[2] On an application for preliminary injunction, the Court may consider the Parties' pleadings, exhibits, affidavits, and declarations. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). "The weight to be given [to each piece of evidence] is in the discretion of the trial court." *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (citation omitted); *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008) ("The Court may consider inadmissible evidence on a motion for preliminary injunction.") (citation omitted).

Policy provides that "[t]he City's social media presence serves as a limited public forum and all content shall be monitored and moderated." (Doc. 12-6 at 7.) The Policy indicates that user-generated posts will be deleted if those posts, among other things: "use[] abusive, vulgar, offensive, profane, sexual, threatening, deliberately untruthful or defamatory language or content." (*Id.* (describing a dozen categories of user-generated content that will be deleted if posted).)

The City uses "Meta's Moderation Assist tool to reduce or filter non-human 'bot' spam postings on its Facebook page, which can overwhelm public pages and make it much more difficult for the public to both obtain important information and participate in the conversation" and "subject unsuspecting members of the public to scams, identity theft schemes, phishing attempts, or fraudulent material." (Doc. 13-1 [Decl. of Rene Carmichael ("Carmichael Decl.")] ¶ 5).) Moderation Assist "will automatically hide a comment depending on the criteria chosen by the Facebook page administrator from a menu of options." (*Id.* ¶ 6.) At all times relevant to the events here, the City had selected four such criteria for Moderation Assist to apply: (1) no profile picture; (2) no friends or followers; (3) link in comment; and (4) repeat offender. (*Id.*; *see also* Doc. 13-4 at 2.) Meta does not inform the City's social media manager, or any other City employee, when it hides posts based on these criteria. (Carmichael Decl. ¶ 10.) In the nearly three years since the City began using this program, Moderation Assist has flagged and hidden only 28 comments. (*See* Doc. 12-4 at 2.)

**B. Plaintiff's Hidden Facebook Comments**

Plaintiff is a resident of Poway who has criticized aspects of the City's decisions for several years, including by speaking during city council meetings, corresponding with City officials, and posting critical comments on the City's Facebook page. (Compl. ¶ 8.) City officials and staff, including those responsible for the Facebook page, appear to recognize Plaintiff as a critic. (*Id.*; *see also* Carmichael Decl. ¶ 11.) Several times during the past year, Plaintiff's comments on the City's Facebook page have been "hidden;" that is, his comments are not deleted and are still visible when *Plaintiff* looks at the posts, but are not

visible when *other Facebook users* look at the posts. (*See* Compl. ¶¶ 11(a)–(f); Doc. 12-2 [Decl. of Reza Ray Jalisi ("Jalisi Decl.")] ¶¶ 5–18).)

Specifically, six of Plaintiff's comments were hidden between June 28, 2026 and October 10, 2026. (Carmichael Decl. ¶ 8.) Four of these comments were critical of the City of Poway's government. (*See* Doc. 13-5 at 6 (June 28, 2026 comment that Poway "has developed a culture of political intimidation, favoritism, and a lack of accountability under the current administration"); *id.* at 10 (September 26, 2026 comment asking "[w]ho's the clown with the cowboy hat on?" on a photograph of Mayor Vaus); *id.* (October 6, 2026 comment asking "[c]an the city provide real examples of how the taxpayers of Poway are involved in development decisions and their voice and feedback is actually utilized to influence decisions?"); *id.* at 12 (October 10, 2026 comment on a flood watch post that "[h]opefully the massive man-made hill that Vaus refers to as the Matterhorn in the Farm doesn't get washed out by the storm").) The other two comments do not appear critical of the City. (*See id.* at 10 (October 6, 2026 comment noting that Plaintiff appeared to be blocked and asking why his comments were not visible); *id.* at 11 (October 6, 2026 comment asking if citizens could call in for a city council meeting).)

Plaintiff believes that the City is hiding his comments because it wants to suppress his critical viewpoints. In support, he cites to evidence of other users' comments that are not hidden, despite them containing similar messaging to his hidden comments. (*See* Jalisi Decl. ¶ 6.) For example, although Plaintiff's comment referring to Mayor Vaus as a "clown with a cowboy hat on" was hidden, another user's comment on the same post referring to Mayor Vaus with a euphemism for "asshole" remained visible. (*Id.* ¶¶ 5–7.) Another time, Plaintiff's comment asking the City to provide examples of how the taxpayers are involved in development decisions was hidden, but Plaintiff's wife's comment—which contained identical text—on the same post remained visible. (*Id.* ¶¶ 8–11.)

The City represents that none of its employees have ever hidden or removed any comments made by Plaintiff; instead, Meta's Moderation Assist Program has hidden these comments because it has flagged Plaintiff's Facebook profile as a non-human bot account.

(Carmichael Decl. ¶¶ 13–14.) It is clear from the activity log produced by Meta that five of Plaintiff's six comments were hidden because Moderation Assist had flagged Plaintiff's account for not having a profile picture. (*See* Doc. 13-6 at 2.) Because Meta "does not provide a log of Moderation Assist activity prior to a rolling cut-off date," there is no affirmative indication that the June 28, 2026 comment was hidden for Plaintiff's lack of a profile picture. (Carmichal Decl. ¶ 9.) The Court is nonetheless persuaded that this is the reason that comment was hidden. First, the no profile picture criterion has been active on the City's page since December 4, 2023 (*see* Doc. 13-4 at 2), and Plaintiff lacked a profile picture when he made the June 28, 2026 comment (*see* Doc. 13-5 at 6). Second, Plaintiff's wife's comment was not hidden, despite it being posted on the same day, on the same post, and containing the exact same message as Plaintiff's comment. (*See* Doc 13-5 at 11.) And Plaintiff's wife's Facebook account does have a profile picture. (*Id.*)

**C. Plaintiff's Un-hidden Facebook Comment**

Plaintiff also believes that the City un-hid one of his comments, where he asked if citizens could call in for a city council meeting, in a viewpoint-discriminatory way. (*See* Doc. 12 at 10 ("The strong impression given by this personalized, ad-hoc approach to the unhiding of auto-moderated comments is that it is occurring on the basis of viewpoint.").) Plaintiff asserts that (1) the social media manager "almost certainly viewed all three of [Plaintiff's hidden] comments but opted to unhide only the most . . . politically neutral of the three;" (2) the City failed to produce activity logs predating August 31, 2026 and (3) the social media manager's declaration relied on inaccurate grounds for believing that Plaintiff's comments should have been flagged by Moderation Assist. (Doc. 12 at 14–16.) According to Plaintiff, these "pieces of evidence [] underscore the impression that [the social media manager] is engaged in viewpoint-based review of comments." (*Id.* at 16.) The declaration of the City's social media manager convincingly suggests otherwise:

> On the morning of Tuesday, October 6, 2026, I posted information to the City's Facebook page regarding that evening's City Council meeting. . . . These types of posts always have the lowest "engagement." Therefore, I was surprised when my phone began informing me via several push notifications

> that there were comments being made to this post that afternoon. However, I observed that the number of push notifications did not match with the number of comments that I was seeing on the post. I was behind on a project I needed to have done by the early afternoon and therefore was trying to multi-task. I kept my project on my computer screen and was tracking comments via the Meta Business Suite app on my mobile phone, instead of switching to the website version. Because the council meeting had no significant agenda items and was anticipated to be short, I was curious why it was getting attention.
>
> When I opened the app to view comments using the "Inbox" tab, which I primarily use to view comments and messages, only two comments were visible. The default selection to view comments is "Most Relevant" so I switched to "All Comments" and then "Hidden by This Page" and did not see any comments. It wasn't until I closed the app and reopened it, this time selecting the "Content" tab (instead of the Inbox tab) and eventually filtered by "Hidden by This Page" that I saw there was a hidden comment from the Plaintiff stating "Can we call in for the meeting?" *That was the only comment by Plaintiff that was visible on my screen.* I am aware of who Plaintiff is, and because I personally knew Plaintiff was not a bot, I manually unhid his comment and responded to it. At that time, it did not occur to me that Plaintiff had possibly made other comments that had been automatically hidden, including his two earlier comments that were made 36 minutes prior (with intervening non-hidden comments from other members of the public), and from nearly five hours earlier. . . . Had I known of Plaintiff's additional hidden comments at the time I "unhid" his October 6, 2026 comment, I would have "unhid" those comments at that time, too.

(Carmichael Decl. ¶ 11 (emphasis added).)

**D. The City's Conduct After the TRO**

On October 22, 2026, the Court granted in part and denied in part Plaintiff's TRO Motion. (Doc. 7.) Specifically, because Defendants did not oppose two of Plaintiff's requests, the Court ordered Defendants to: (1) "restore the public visibility of every comment by Plaintiff that has been hidden on the city's official Facebook page" and (2) [r]efrain from hiding, deleting, or otherwise suppressing Plaintiff's comments on the City's official Facebook page on the basis of their viewpoint." (*Id.* at 10.) The Court denied the TRO motion to the extent Plaintiff sought an Order "remov[ing] any restriction that causes Plaintiff's comments on the City Page to be hidden from the public." (*Id.* at 9.)

The Parties "agree that the City has complied" with the TRO. (*See* Doc. 12 at 19.) Indeed, the social media manager had "been regularly checking for hidden posts by Plaintiff since the Court issued its order," and whenever they discovered that one of Plaintiff's comments had been hidden by Moderation Assist, they immediately un-hid his comment. (Carmichael Decl. ¶ 15.) On October 29, 2026, though, the City "disabled the 'no profile picture' criteri[on] . . . because of the inordinate amount of time that was being consumed regularly checking for comments by Plaintiff." (*Id.* ¶ 17.) Moderation Assist continues to apply the three other criteria for flagging potential bot comments. (*Id.*) "If and when the City's Facebook page becomes inundated with non-human 'bot' or 'spam' posts, [the social media manager] may, in consultation and coordination with the City Manager, choose to reenable the 'no profile picture' criteria." (*Id.* ¶ 18.) However, the City "has no intention of 're-hiding' Plaintiff's comments" should the TRO expire and the instant motion be denied. (Doc. 13 at 21.)

## II. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The legal standards applicable to TROs and preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation modified). To obtain either, the moving party must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the Government opposes the request for injunctive relief, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. DISCUSSION

Plaintiff argues that he is "likely to establish that the City engaged in viewpoint-based discrimination against him by selectively unhiding those comments of his that it found acceptable while leaving hidden those comments of his that it would prefer to disregard." (Doc. 12 at 11.) As the party seeking a preliminary injunction, Plaintiff bears the burden of showing that the *Winter* factors weigh in his favor. The Court finds that he has not met that burden.

### A. Likelihood of Success

#### 1. Viewpoint-Neutral Reason

Plaintiff makes clear that he does not "challenge [] the use of Moderation Assist, per se." (*Id.* at 14.) Instead, he argues "that the use of auto-moderation at some point in the City's process of dealing with comments does not insulate the City from the possibility that it engaged in viewpoint-based discrimination through subsequent human review of flagged comments." (*Id.*) Thus, the crux of Plaintiff's argument is that when the social media manager un-hid his comment about calling in to a city council meeting, she could have un-hid each of his other more politically motivated comments but chose not to, either because of the content of Plaintiff's messages or because Plaintiff was a known critic of the City.

Plaintiff's assertion, based on several unsubstantiated assumptions (*see id.* at 14–16), does not overcome the government employee's sworn declaration. Weighing the evidence here, the Court finds that there was indeed a viewpoint-neutral reason that the social media manager did not un-hide all of Plaintiff's comments on October 6, 2026: she did not see them. (*See supra* Section I.C (citing Carmichael Decl. ¶ 11).)

This is not a situation like the one in *Leighty v. Spokane County*, where the court found that the plaintiff experienced viewpoint discrimination because the government hid his Facebook comments either "because he [was] the individual commenting" or because his comments were critical. No. 2:24-CV-0165-TOR, 2024 WL 3432364, at *11 (E.D. Wash. July 16, 2024). There, the Spokane County Sheriff's Department's Facebook page hid the plaintiff's comments criticizing its handling of a domestic violence incident and a

drug investigation while "simultaneously 'lik[ing]' comments that appeared supportive." *Id.* at *3. These were intentional efforts by the government to censor the plaintiff's speech under the guise of non-compliance with a "catch-all" provision regulating online conduct, but the court found the provision ambiguous and the regulation of speech inconsistent and targeted. *Id.* at *3, 11. Here, by contrast, Plaintiff's comments were not targeted because of their message or Plaintiff's identity; they were hidden by Moderation Assist's application of criteria that applied to all comments, and were unhidden because the social media manager only saw one comment and knew that Plaintiff was not a bot.

**2. Limited Public Forum**

"Forum analysis divides government property into three categories: public fora, designated public fora, and nonpublic fora." *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (citation modified). Designated public fora "exist[] where the government intentionally opens up a nontraditional forum for public discourse." *Id.* (citation modified). A limited public forum "is a sub-category of a designated public forum that refers to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics." *Id.* (citation modified).

On the record before it, the Court finds that the City's Facebook page is a limited public forum. As the Ninth Circuit has explained, government "social media pages [that] were open and available to the public without any restriction on the form or content of comments" constituted designated public fora. *Garnier v. O'Connor Ratcliff*, 41 F.4th 1158, 1178 (9th Cir. 2022), *vacated and remanded on other grounds by* 601 U.S. 205 (2024). After the government "add[ed] word filters to their Facebook pages" and consistently restricted the way the public was allowed to interact, those same social media pages became limited public fora. *Id.* at 1179; *see also PETA v. Tabak*, 109 F.4th 627, 634 (D.C. Cir. 2024) ("In the social media context, courts have also found that the comment threads of government social media pages are designated public forums when the pages are open for comment without restrictions and limited public forums when the government prospectively sets restrictions.") (collecting cases).

Restrictions in limited public fora "must not discriminate against speech on the basis of viewpoint" and "must be reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). As discussed above, the City did not hide or un-hide Plaintiff's comments based on viewpoint; rather, these restrictions were applied to Plaintiff because his account was flagged for not having a profile picture and because the social media manager only saw the one comment about calling in to a city council meeting. *Accord Scheffler v. Chitwood*, Case No.: 6:23-cv-1634-JSS-DCI, 2024 WL 4591246, at *6 (M.D. Fla. Oct. 28, 2024) (finding the use of Meta Moderation Assist to hide comments from accounts flagged as likely spam "viewpoint-neutral because [it does] not target particular views taken by speakers on a given subject matter") (citation modified).

With respect to the second prong, the restriction "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985) (emphasis in original). The purpose of the City's social media presence is "to provide current and time-sensitive communications about events, activities, meetings and issues to inform and encourage resident participation in local government." (Doc. 13-3 at 2.) The City uses Moderation Assist "to reduce or filter non-human 'bot' spam postings on its Facebook page, which can overwhelm public pages and make it much more difficult for the public to both obtain important information and participate in the conversation" and "subject unsuspecting members of the public to scams, identity theft schemes, phishing attempts, or fraudulent material." (Carmichael Decl. ¶ 5.)

The Court finds that the restrictions on comments made by likely bots are reasonable in light of the purposes served by the City's Facebook page. *Accord Scheffler*, 2024 WL 4591246, at *6 (finding the use of Meta Moderation Assist reasonable "to prevent the spread of spam, scams, and fraud through the Facebook page") (citing *ISKCON Miami, Inc. v. Metro. Dade Cnty.*, 147 F.3d 1282, 1288 (11th Cir. 1998) and *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 684 (1992)).

Because the City's restriction on speech is viewpoint-neutral and reasonable in light of the purpose served by the limited public forum, the Court finds that Plaintiff has not met his burden to show a likelihood of success, or even serious questions going to the merits. Because these are threshold inquiries, the Court need not consider the other *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Therefore, the PI Motion is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the PI Motion (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

DATE: November 19, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE